The first case for argument this morning is 20-2118, Right Data v. BI Science. Mr. Charsh. Is it Charsh? Is that pronounced right? It's Charsh. Charsh. Thank you. All right. May I begin, Your Honor? Sure. Good morning, Your Honors. May it please the Court. I would like to begin today with a settlement issue and then move to the issue of personal jurisdiction. The District Court held that on February 23, 2020, the parties entered into a binding settlement agreement. And tonight, we all know the facts, but I've got a lot of questions. So let me start with what you started with. I don't want to get you out of line here, but am I correct that if we were hypothetically to agree that there was a valid settlement agreement, that would not implicate personal jurisdiction? I think you are correct, Your Honor. So personal jurisdiction is off the table. Okay. I appreciate that. I agree. Yes. Shall I continue? Yes. Thank you. That on February 23, 2020, the parties entered into a binding settlement agreement in the form of the document that appears at Appendix Pages 5 to 6, which we call the Mediator's Proposal. But that Mediator's Proposal document did not exist on February 23, 2020. Two days later, Bright Data sent the document to BI Science with an email saying, we received the completed settlement. Okay. But we're here reviewing a District Court decision, right? Yes, Your Honor. What's the standard of review? I mean, the real issue there, the nub of the issue is mutual assent. So is that not a question that we review differentially? Your Honor, there are – It's a fact question, right? There are multiple grounds on which we argue that the Mediator's Proposal is not a valid settlement agreement. Mutual assent is just one of them. And as this Court held last year in Plasmacam, I would agree, Your Honor, that that is a question of contract formation that is fact-based. But there are other deficiencies in this Mediator's Proposal document that we submit should be considered on a de novo basis. For one, we argue, and we think the record shows clearly, that not all essential terms were contained in this Mediator's Proposal, that that is evidenced by the fact that Bright Data sent a three-page document with their implementation mechanics schedule. And even more strongly, the arbitrator himself, Mr. Cornelius, writes in his arbitration award that it is essential to give meaning to this agreement that I add the following three pages of terms. Excuse me for jumping in the middle of a sentence there, but we had here a motion to enforce the settlement agreement, and it's, I think, 1479 of the Joint Appendix. And then we have an opposition to the motion to enforce, filed by your client, which is at page 1547. And significantly, at least to me in there, is in the motion to enforce, there's a long recitation of facts explaining why there was an agreement. But then, in the response, there's no challenge, as far as I can tell, to that recitation of facts. And indeed, there are statements, page 1549, the BI agreed, this is in its response, to the framework proposed by the Mediator, or the arbitrator, I get Mediator, and then BI says it cannot perform as contemplated under the mediated settlement. So getting back to the point that Judge Post was raising about the standard of review here, how, in the face of that, can we say that the judge was wrong here in saying it was a settlement agreement? I'll just add, you had, at the hearing, Mr. Cornelius saying, I conclude there was a settlement. Putting that all together, I don't see how you can overrule what the judge did here. And I'll let you respond. Thank you, Your Honor. It would be my pleasure. Your Honor, it is true that in the March 25, 2020, opposition to Bright Data's motion to enforce the settlement, that there are arguments made that would assume the validity of the settlement agreements. But at the same time, on one of those pages that Your Honor referenced, on page 1549, as well as on... Do you not agree that reading that response in its totality, the main argument, if not virtually the exclusive argument, was not that there was no settlement agreement, but other stuff? I mean, what is it? You're arguing we should read in a provision that says you can be excused in extraordinary circumstances based on COVID. All of that is predicated on the fact there's a settlement agreement here, and we should have been excused from it. So do you not... Because when you read the transcript from Chief Judge Gilstraff, I think he was kind of incredulous that where is this... Because you did raise it at the hearing. Nobody's disputing that, the question of whether or not there was a settlement or not. And he pointed out that it was not raised before. And I don't think your attorney pushed back on that. I think that, Your Honor, Mr. Findley did push back, and that was at 1659 to 1660. He staked out his position. I think, Your Honor, Judge Schall, that although Judge Crost is correct, the main argument assumes the validity. There are numerous statements at those pages, 1549, 50, 51, and 52, that there was no binding agreement, that B.I. Science always understood, and that there would be further negotiations within this framework. I actually like the quote that you used, Your Honor, Judge Schall, because that is B.I. Science's understanding. Can we just look at... You're saying that in this document, which is the response, the opposition to enforce the settlement agreement, that you specifically staked out a legal argument that there was no settlement agreement at all? Not a binding settlement agreement. Where? I have some quotes for the panel at 1549. B.I. Science agreed to the framework proposed by the mediator as a way to hopefully resolve this case. I will try to find it on the page. Yes, that would be the first full paragraph, Your Honors. B.I. Science agreed to the second line. B.I. Science agreed to the framework proposed by the mediator as a way to hopefully resolve this case. That is not a commitment that B.I. Science... And then it says, accordingly, at the bottom of the page, I think this is one of the things that Judge Schall was referencing, B.I. Science cannot perform as contemplated under the mediated settlement at the current time. And it contends it should be excused from performance in light of the impracticality of the current situation, meaning the recent uptick in the COVID pandemic. You're absolutely right, Your Honor. There are statements here, as I concede, and must, that do assume the validity of the settlement agreement. Getting back to your question, Judge Hughes, I think... I mean, here's the problem I have. You have straight sentences, but they're coming under different legal arguments. If we were talking about whether you preserved an argument for appeal or made it properly, these straight sentences probably wouldn't cut it, would they? I mean, if your response... And also, why, if your response was there's no settlement, wouldn't your first argument be, point one, there was no legal settlement? Here's the legal standards for a settlement. Here are why we don't have one. None of that's in this opposition. I mean, I take some of your arguments are somewhat persuasive to me, frankly, about why, if you look at the document itself, that it doesn't appear like a settlement. It's, you know, it was sent in by the mediator. It's not signed by both parties. It says, settlement in principle. That, to me, all of that contemplates that the actual settlement agreement is going to be worked out later. But it's the course of conduct after that happens, particularly in this motion and response to the motion, that troubles me. It seems like you actually were proceeding under the impression that you did have a settlement agreement. Why should we conclude that those straight sentences you're going to cite me are enough to preserve the argument that there wasn't a settlement? In response, I would say, Your Honor, that Judge Gilstrap decided to accept that as B.I. Science's position. He states at page 1685 of the appendix, during that April 13, 2020 hearing, that I understand the position you've taken today, and I certainly respect it. But that's not really responsive, I don't think, to what Judge Hughes is getting at. Even though Judge Gilstrap accepted it, what you argued in your reply, at a minimum, suggests what the state of play was here. If, in fact, we were to say that there was no mutual assent, it really matters in how we evaluate whether there was or wasn't the fact that you didn't press hardly at all, if at all, in your reply. I think maybe Judge Gilstrap was affected by that. Even if you're right that it wasn't technically a waiver, let me ask you about that. Chief Judge Gilstrap has been around a very long time. I don't know. I think I can hear at least six years of patent cases, and probably close to that number of settlements, since the vast majority do not go to trial. Shouldn't we consider that? I mean, different courts may have different practices. The federal government may have a different way of construing settlements agreements, in principle, when they've been mediated, and whether that constitutes a real settlement or not. Isn't some deference owed to this judge? And, in fact, he said this to your counsel. He said, you've been here for decades. You've practiced before me tons of times. You filed this thing. This thing was filed with me. And even though it said, in principle, you know the way things are construed here, you know the way things are done here. And this, to me, was a final binding agreement. Doesn't that matter in this context? Perhaps it matters, Your Honor, but I don't think at all, as a matter of law, it is sufficient. And I think very important data points in that respect are the numerous cases that we cited in which there were reports of settlements, including not just settlement in principle, but reports of this case has settled to the courts, including the Eastern District of Texas. And that would be the Kruitt case. Okay, well, one thing is that it's a little... It's also, though this goes to the point you've been talking about this morning, was even though you raised it at the oral hearing, in addition to your other arguments about how there are other reasons, even if there is a settlement agreement, you never cited any cases. You didn't raise Texas Rule 11, which is one of the centerpieces of your briefing before us, that it's problematic. I think my recollection is all you said to Chief Judge Gilstrap was disagreeing with the cases the other side had cited. So you didn't make any kind of legal argument when you're saying, as a matter of law, it shouldn't be construed. You didn't make that argument to Judge Gilstrap, did you? Your Honor, the opposition to the motion to enforce does appear starting at page 1547, and I can't explain the tactics of trial counsel... But I'm talking about... We know you didn't really raise anything there. What about at the oral hearing? You did raise the issue at the oral hearing before Chief Judge Gilstrap, but you didn't make a fulsome legal argument for a motion to leave, to file a legal thing. So you're coming up here with all of these cases that you say we ought to conclude as a matter of law that this was not a settlement. None of that was argued to Chief Judge Gilstrap, right? For the most part, Your Honor, is correct. Chief Judge Gilstrap says at page 1676 of the transcript, are you telling me that your position now is that there are missing material terms and there is no binding signature? And that was the position that was brought, and citations are not... Yes, he said yes to making that argument, but he didn't argue any case law. He didn't cite Texas Rule 11, which is the centerpiece of your briefing here, and he didn't cite any of the cases that you cited. That is correct, Your Honor. Okay, can I ask you just the same issue, but kind of another piece of it, which is the arbitration award here. When I look at the award, so I'm looking at it on your legal question. It said an agreement in principle, and you say they were material terms. It doesn't constitute an agreement because there were so many open issues. So I figured the best place to look for what the open issues were is the arbitration award, because those were the issues you were disputing. Is that a fair thing for me to look at? Not necessarily, Your Honor, because what Judge Gilstrap did was, at Bright Data's request, first decide whether or not there was a binding agreement, and then there were disputes how to implement or resolve the 17 terms of what Judge Gilstrap found was a binding agreement. But there were problems of missing material terms that aren't in there, that were not within the scope of arbitration, which assumed that the mediator's proposal were the four corners of a binding agreement. I'll accept that for your argument. But nonetheless, if we look at the arbitration agreement and the issues that presumably were raised by you, you know, in terms of the disputed terms, as a way of kind of trying to figure out whether or not there was enough of an agreement, because you agreed that, you know, you can have a valid settlement agreement, and there could be, you know, little things still left out, either for arbitration or for ironing out, you know, after the settlement agreement. It doesn't seem to me like these issues that were raised in terms of the disputed terms are necessarily... They don't persuade me that, yeah, there was really no agreement. If there remained a serious dispute about these material terms, it really points to the direction there was no agreement. You're not thinking that these were those kinds of terms, right? Your Honour, the terms that were really at the heart of this are reflected in the draft settlement agreements that the parties exchanged. And the key terms that were not in the agreement that were most important to BI science may be found at page 1487, summarized by Bright Data. And the most important one, which is the primary reason why BI science refused to sign the mediator's proposal proper to it on February 25th, two days after the purported agreement, the key is term 12. And that contradicts term 10. Oh, those are those two paragraphs about the patent. That is correct, Your Honour. You say the key reason that he didn't sign it. In the email exchanges, the one that seems quite relevant to this... I'm sorry, I'm probably not going to be able to find it. Is it the one relating to approval? Where the mediator set out very carefully, I'm going to go tell the... I'm ready to go tell Chief Judge Gilstrap that we've got a settlement. I don't think he says in principle. I think he says that we've settled this case, yes or no. And your response was... Thank you for all your hard work, Bill. Yes. I mean, you'd think if there was something... If he disagreed with anything that was in that email, it was kind of a notice by the mediator. This is what I'm going to do. This is what I'm going to tell the Chief Judge. I don't think that email says settlement in principle. I think it says settlement. Didn't there seem to be some confusion or discussions about the provision with respect to a 37.5% payment for former BI clients or proxies? Yes. And a question of whether when they were folded in, Bright Data would unreasonably refuse to accept them. That seemed to me to be a major issue in these discussions that took place after February 20th or 23rd, whatever it was. You're correct, Judge Shaw, and those issues also appear at page 1487. But to get back to your point, Judge Prost, we think what appears at page 1501, which is the email Your Honor is referring to, is critical because there is no list of terms attached. This is what this case boils down to in our view. What Mediator Cornelius writes in this email is that the parties have reached a settlement based on the Mediator's proposal, which incorporates the list of terms from Ron that I shared with Eric, although some of those terms are modified in some respects by the Mediator's proposal. No one could make heads or tails of that, Your Honor. All I'm suggesting is you can tell me no attorney argument. No one could make heads or tails of this. But he says, unless you object, he says something like what you're saying in the first paragraph, and then he says, unless you object, I will notify Judge Gilstrap of the settlement and request you cancel the hearing. I will tell him a motion to stay is forthcoming, blah, blah, blah. Congrats to you for all getting this resolved. So you think if there was a problem with that, forget what the first paragraph says, but if the first paragraph is what you would like us to construe it as, wouldn't they have said, wouldn't your client have said something other than thanks for all your hard work, Bill? Wouldn't he have said, wait a minute, maybe you ought to not tell Chief Judge Gilstrap that we have a settlement, there's still some questions I have, here are the questions. Really? I would say really, Your Honor, and we have numerous cases that I think are very persuasive. This same exact thing happened in a northern district of Texas case called UMB versus Fallujah. The parties were working with a mediator. UMB wrote that it approved both the monetary amount and the settlement and the general terms thereof. The mediator sends an offer, and the response is almost word for word what we have in our case. Thank you for all your work on this case. UMB is agreeable to the terms and principle, etc. No, but that's different. I mean, that's terms and principle, which is what you emphasized. This says of the settlement, right? I mean, there's a difference between those words. There is a difference, Your Honor, but the law requires unequivocal, unambiguous, positive, absolute acceptance of a set of terms. That is not what 1501 contains, and that is not contained anywhere in the record at no time, whereas B.I. Science presented with 17 terms and say we agree to those terms every case on copyright. Let me ask you one other question which is related to this, which is on the question of Texas rules, which is, as I said, something that you rely on extensively in your brief to support your legal rationale for why there was no settlement agreement. Is there a waiver problem with respect to that issue given that you never raised that below with Chief Judge Gilstrap? Two points in response, Your Honor. Number one, it was raised with Chief Judge Gilstrap in eight stay briefs in which it was briefed extensively. No, no, no, no, no, no. The stay briefs, wait. Judge Gilstrap has an oral hearing, and he makes a decision. When do those stay briefs come in? Afterward, Your Honor. Afterward. Oh, right, right. So I'm talking about what preceded his decision. Yeah, you could have sent him a letter yesterday saying that. It doesn't matter. It doesn't get you out of waiver. Right. So I'll tell you what gets us out of waiver. This is the United States Supreme Court. Ye versus Escondido, 1996. Pfizer v. Lee from this court. Interactive gift from this court in 2001. This court, as the court said, an interactive gift, reviews decisions, not arguments. If the issue is preserved and the issue of the validity of the settlement agreement, and specifically whether it contained a binding signature and material terms, was presented and was preserved, as I mentioned, page 1676, that issue is now before this court. Well, don't you think this court would benefit, even if we bought it? Wouldn't that at best be a remand for you? I mean, don't you think this court, if it was going to entertain a major argument about Texas rule, that we would benefit from the advice or the determination by the chief judge of the district court before we ruled on that in terms of him dealing with the issue and how he construes the applicability of the issue? So even if you were right on a waiver, don't you think a remand would be in order here? I think, Your Honor, that it is a legal issue, which would be reviewable de novo. I don't mean in any sense to discount value that Chief Judge Gilstrap would add, but I do believe that it is a legal issue. And I will add, if I may very briefly, that some of the cases like Clarence Energy versus Leasing Ventures, which is almost the same facts as we have here, deal in principle, we're settled, we're settled, yeah, we're settled, let's tell the court, we're settled, but then no settlement. Court of Appeals reversing the district court. Clarence Energy says this is a Texas Rule 11 case, but you know what? We're going to analyze it under contract principles because it's basically the same. So either way, under Texas Rule 11 or under general contract principles, putting aside Texas Rule 11, as I mentioned a few minutes ago, the court needs to find evidence that B.I. Science says, yes, we agree to these 17 terms. And that evidence... Transcript, since you have demonstrated that you're probably better versed in the record than I. I would hope so, for my sake, Your Honor. Where does Mr. Finley make the argument that there is no signature? Where does he say anything about the lack of a signature? I don't recall offhand Mr. Finley saying it. I do recall Judge Gilstrap saying it at page 1676. Let's see if I have that. I have that slide. But Mr. Finley doesn't say that. I'm talking about the representation of the lawyer who's making the argument that there was not a valid agreement, and he doesn't make the argument. Okay, so we've got that he doesn't make any of the legal arguments, and you're telling me that's okay because we can do questions of law de novo. But you're telling me this is a kind of factual representation, right? He doesn't make the... He doesn't seem to have been focused on Texas Rule 11, Your Honor, and the signature requirement. Okay, the signature requirement. Thank you very much. Thank you, Your Honor. I know... We do get to personal jurisdiction. Sorry about that, but we've got the briefing. Mr. Harkness. May it please the Court, in addition, I've tried to listen carefully to what Your Honors have asked about to conform my argument and not tread old ground. In addition to the brief where they said by science cannot perform as contemplated under the mediated settlement, which is pointed out in 1549, we have supplemented the record in a way that we thought was relevant, and that came in yesterday because that brief actually does more. It cites to an exhibit, which is a declaration from the CEO of the company, and it has got Mr. Kefir-Moyle's signature, wet signature at 1625, and in the declaration, Mr. Kefir-Moyle at appendix 1624 says, on February 22nd and 23rd, when we agreed to the framework proposed by mediator Bill Cornelius as a way to hopefully resolve this case by science intended to replace its revenue stream generated by the sale of proxy services by going to private investors. Then he says later, I believe it is financially impossible for by science to implement the settlement terms. I think there's already a flavor of that in the documents we had before. So let me ask you, I found kind of your need of your brief a little confusing. So I see like you were arguing kind of at the same time what this appeal is about, and you mentioned the district court, but you seem to embrace the arbitration award as if you're saying that the arbitrator had the authority to decide whether there was an agreement in the first instance, and he did that. So we're kind of reviewing that alongside the district court. I just think you're wrong about that. I don't understand how we're reviewing the district court's decision with regard to this. The arbitrator doesn't have a place contending. The arbitrator is the one that has the authority to say, yes, there was no agreement, and no, there wasn't. I mean, the mediator could give testimony. I mean, the arbitrator says even his award, his role is to resolve by binding arbitration disputes regarding the terms and provisions of the settlement, not just say whether or not there's a settlement. So is it your view that what's on appeal here is the arbitrator's decision that there was a settlement? Thank you, Your Honor. We have worked under both premises here. So first, we think there is an agreement, but Your Honor is correct. We do think, in fact, that the definitive determination here  in Preston v. Ferrer, which we cited at 552 U.S. 346 at 353, and that is discussed in our brief, and that cites another U.S. Supreme Court case, Prima Paint Corp. at 388 U.S. 395. And what that decision says is if you have an agreement and it contains an arbitration clause, that is a form selection clause in the contract. But the premise for that is if you have an agreement, but what... Yes, sorry. First, the district court has to determine there's an agreement. And that's where Preston... And the district court made that determination, and that's what we're reviewing, isn't it? So what Preston v. Ferrer says is, quote, a tax on the validity of an entire contract as distinct from a tax aimed at the arbitration clause are within the arbitrator's ken. That is, you do... The district court needs to find if the parties agreed to the arbitration clause independently. And the reason for that is Federal Arbitration Act Section 4 says exactly that. Not that you have an agreement on the whole, but that you have an agreement to arbitrate. That's what the... Wait, so your point is, if there's a question about the validity of the actual underlying agreement, if the parties agreed to arbitrate... Correct. ...then the arbitrator gets to decide that. That's what... Judge Gilstrap didn't find that there was a separate agreement to arbitrate whether this was a valid settlement agreement. He found that there was a valid settlement agreement and then sent it to the arbitrator to enforce it. He did. He did. He found that the whole agreement was valid, and he found that the arbitration... As part of... Yes, that's correct. ...the agreement. So what we need to do on appeal, under Fifth Circuit authority and under the Supreme Court authority, is break that finding into the two pieces. One is, is the whole agreement valid? And the other is, was his finding that at least the parties said that they were going to arbitrate this agreement is valid? And under... But if there's no agreement, then what are they going to arbitrate? So this is where Preston v. Ferrer in the Prima Paint case go to exact... I was asked. So this is exactly Supreme Court authority. You look at whether the parties ever challenged the arbitration provision separately. And if they'd never challenged the arbitration provision separately and it says that we're going... that the arbitrator, the form... Never challenged it separately. If they're challenging the existence of the agreement in and of itself, of course they're challenging everything about whether there was agreement of itself. That is not what the Supreme Court says. Supreme Court says... Is there any focus at all on this argument to Judge Gilstrap that where you say, well, even if there's a dispute about the validity of this agreement, you should send that dispute to the arbitrator. Extensively. Extensively. If you look at the transcript from April 13th, I was the one arguing the motion and I said we think primarily... Give us a page sign. Okay. Excuse me. Let me make sure I have the... I want to make sure I have the... Okay. So we're at 1652. 1652? Is the transcript from April 13th here. And let me just find the place where I'm starting to talk. Okay. At 1657, Mr. Harkins starts at... That's me? At line 15. Your Honor, I think there's potentially two ways of looking at it, but I think essentially I think you are correct. We're looking for a declaration as to the fact that Exhibit A is the settlement agreement and that constitutes a complete and binding settlement agreement between the parties and there is an arbitration provision in that that should be enforced. Other disputes about the agreement can then proceed to the arbitration... That's exactly right. Nobody disagrees with that. We're looking for a declaration that there's a settlement agreement. That's the first question. And that constitutes a complete and binding settlement agreement between the parties. That's what we're all agreeing with. And that there is an arbitration provision in that that should be enforced. Absolutely. I have no qualms about that. Any other disputes about the agreement can then proceed to arbitration. That's exactly the way I see it. Can we complete the sentence that I argued to the Court, which is, which based on the Court's declaration enforcement of the at least arbitration provision of the agreement will allow us to work out any further problems that the parties have with each other that I was saying if you at least find that the parties agreed to arbitrate... That's not what that means. That means if you have further disputes about the settlement agreement you just found valid, the arbitrator can work them out. I think you're wasting your time. I certainly understand that I'm fighting an uphill battle on this point. Let me go to a couple of other points that we've raised with your friend. One is, do you think there's a waiver of the Rule 11 argument? We do think there's a waiver of the Rule 11 argument. Why wasn't he right that it's a legal question and there are arguments that are made here that weren't necessarily made for all the different legal arguments thrown in on appeal? Why is he not right that he didn't have to preserve the subpoena? I apologize, Your Honor. Who is the he in your question? We're saying that he waived his right to raise on appeal your colleague on the other side. I see. And could you ask me one more time? I was not following the... What I asked him was, he makes a big deal here in terms of making his legal argument as to whether or not there's a settlement of invoking Texas Rule 11. Now you disagree with him on the merits. I think there are arguments on both sides. But if we were to agree with him on the merits, is there an argument to be made that he can't present that argument to us on appeal because that was not an argument made to Judge Gilstrap? Right. So Judge Gilstrap made the decision to send this to arbitration and then the arbitration was participated in and there was an award that came out of the arbitration. And up through that point, no Rule 11 Texas argument or signature argument had been made. Then a judgment was entered in this case. And up through that point, no argument was made to the court that there needed to be this signature requirement or Texas Rule 11. Only after the appeal was first noticed in this case and there was a motion to stay the enforcement... I know the scenario of the facts. My question is, what is the legal impact of that in terms of whether or not there's a waiver? I believe there is a waiver as a result of that because it wasn't presented to the district court in a way that... But it's a legal argument in support of a position they preserved. Right? They preserved... Let's just assume, I don't want to get in a fight with you about whether they preserved it or not. Let's just assume they preserved the argument that this isn't a binding settlement agreement because there's no signature and there's material terms absent. There's at least references signature by Judge Gilstrap. I don't know if that came out of the blue or if it was argued somewhere in the transcript that we didn't see. But let's just assume that that was their argument. This is not a binding agreement because there's no signature from them and there's material terms missing. If on appeal they can come up with additional legal support for why the additional, the no signature is relevant to contract formation, why can't they offer that as additional legal support? Judge Gilstrap ordered this to an arbitration based on the arguments that were presented to him. You know what? This arbitration nonsense is not answering the questions. What? Oh, I'm sorry. Well, I don't care about the arbitration because what we're trying to determine is if there's a valid settlement agreement in the first place. What happened to enforce it at arbitration is not what I'm trying to ask about. So if the argument is there is no valid settlement agreement because there's no signature and there's no material terms which was preserved below, why on appeal can't they argue that Texas Rule 11 requires a valid signature? The reason I've been bringing up the arbitration is because the position changed at that point. I don't care. Then it wasn't, I understand what Your Honor is saying. So my understanding is that there was an argument presented to the judge that he had a certain set of arguments that he worked off of that he reached a decision on and that had And his decision was that it's a valid contract. Correct. So presumably he determined that the signature requirement wasn't, you know, binding on him and that there were no material terms missing because if there was a valid signature requirement and there are mandatory terms missing then there's no contract, right? Well, I would disagree with that, Your Honor, because No, no, no. Let me ask you this hypothetically not on the facts of this case. Yes. If this agreement, we call it the agreement instead of assuming it was a settlement was required to have two signatures Right. and was required to have all mandatory terms but it's not disputed that there are mandatory terms missing then that's not a valid settlement agreement. Right? That's true. If there are mandatory terms that you needed in the agreement that are missing whether or not there's a signature even if they're signed but there's something that absolutely means the parties didn't reach a conclusion on material terms that absolutely would mean that you don't have an agreement. Right. And if under Texas law there's a signature requirement and there's no signature then it's not a valid contract. So under Texas Rule 11 No, no, no. Answer my hypothetical. I don't want to get into a debate about it. You can move on to that if you want. If Texas law requires it assume it does that there'd be a valid signature and there's no valid signature then it's not a contract. Right? If it requires it and there is no something that Rule 11 would consider meets the signature requirement that is a debate that we have but that you can have other affirmances including by the way Mr. Moyle's signature that he did on March 25th saying that he had agreed to the framework from Mr. Cordelius. Let me move on to one of the other arguments your friend makes is that there were material issues that were unresolved. Right. One of those are the arguably theoretically conflicting paragraphs about the 044 patent and I forget the other one. So why don't you address and you know his main arguments about the material provisions that weren't resolved. So there was nothing so what we will say is that argument was never raised in the first instance about there being some conflict between terms 10 and 12. Raised in what first instance?  when we said we're going to move to enforce the settlement agreement they never said we didn't agree we think there's a conflict between 10 and 12. This is an appellate type argument. This wasn't an argument. This was raised I think for the first time after the judgment was entered. The only thing they argued in the first instance where Mr. Finley did at the 13th and what was briefed was this idea that you know you need that not all the dates were put in. There was no discussion about the conflict of the patent provisions and there is no conflict of the patent provisions because one says we're not going to start challenging the patent and the other one says you're going to assign the patent to us. That's a belt and suspenders type of a situation. I mean that's not a contradiction. They don't you can do both those things. We can not challenge the patent. They can then assign the patent to us. So 10 and 12 are not inherently contradictory terms. In fact what they have said by the way subsequently is what we later in August they said what we really meant to do we didn't tell anybody this earlier but what we really meant to do is give you a license to the patents. We weren't going to transfer them to you we were going to give you a license to the patents. Where did that argument come up? This is what their explanation for why they didn't agree to term 12 they started to talk about it in August. In August we are before we've got three different things. We've got the Gill-Straps separate but the arbitrator and then we've got the patent. This was not raised in the case. This is this would be just one second please. I think this is subsequent to the entry of the judgment when there was an appeal there was a motion to stay that was filed by by science and I think that's the first time there's an explanation of where they were saying actually we intended to license this instead and I'm just trying to find the Well the docket sheet does suggest the number of events took place after the appeal. Right. So for my purposes all I'm saying is there was no argument ever made before the judgment that said we did not agree that these were contradictory terms. Mr. Moyle did a declaration in March of 25 of 2020 a month after the settlement happened where he said we agreed to the framework. They had the 17 terms and he just said we agreed to the mediators framework just like he testified to. Do you think the framework is the same thing as the settlement? At that time in March they called it a settlement and the framework is there's too many details to work out and the argument at that time Mr. Finley starts to argue is in that transcript is that the fact that there are dates to work out mean maybe that we never really reached an agreement. You will see nothing in that transcript except in the finding of indefiniteness and it's claimed 108 of the 044 pattern and it has a preamble that sets out four components that are the architecture of a system about proxies and what that says is there's a customer's quote first device then there is a network server called a first server then there is a tunnel or proxy device called the second device and then there's the second server which is a web server and that's all set out in the preamble and what the preamble says is it's a method by the first device and there's no dispute that the preamble is limiting. Nobody's disputing that. Alright so Chief Judge Gilstrap had a problem with this via a second device identified and the other side kind of a variation of that argument is also as I understand it there's no reference to the first what the first device is doing here. I mean I've read this 20 times with these words over. Tell me why Judge Gilstrap was right. What is the meaning of the second device and what is the first device doing in the limitations A through E? So the way this works is that claim 108 is all of the steps of claim 108 A through E are method steps via the second device. None of those steps are being performed by the first device. In fact two of the steps talk about an interaction between the method performing element and the first device. So if you look at 108B it says receiving a second request from the first device. So you know it's not the first device that's performing the method steps because that's the one that's providing the request. So where is the via the second device? Not in A. A just sends sending the second device identifier to the first server. It's not B as you say. Where is the work being done by the first device? The method is in the preamble. And so what we showed in the brief is that when you look at the specification and how it's laid out, all of those steps, the only way the claim makes sense, it doesn't say sending via second device, receiving via second device, but they all line up with the second device. Can we just look at the claim for a minute? Tell me, point to me something in the claim that says what you're saying here. Well, so, the claim itself just says that it's a method for fetching and it says via a second device. And then when you look at the steps, you do have to understand it in the context of the patent as a whole. Like, you go to the patent and you find out, well, what is it that would be sending the second identifier? And we showed you figure 5B, for instance, where you can actually line up all of the parts of the claim with that tunnel device that's the second device. And that's what, we had expert testimony about it, and we say, look, when you look at the specification, under Phillips, you're supposed to do that, and you can find out that, well, what makes sense to do A, B, C, D, and E that's listed in the preamble? Because the method has to be set out as in the preamble. And there's only two choices. It's via first device and via a second device. And we know this from the first device. So, method step B, receiving a second request from the first device. So it's not the first device. And then step C, in response to receiving the first content, sending the first content to the first device. And so, this is something that's sending back and forth to the first device. Your argument, as I recall it, leads very strongly with presumption of validity, yada-da, Phillips, you should try to preserve the validity of the pattern. That's not really consistent with either Phillips or certainly not what the Supreme Court told us about obvious, about inaudibles. So you're not suggesting that we don't understand it, but we should put a big thumb on the scale or a foot on the scale because we're here to preserve validity? No. No. We're not advocating. Your Honors deal with this all the time. I'm absolutely not advocating that we depart from the Nautilus footnote 10 that talks about how you determine section 112. We're not advocating for that. We are just saying, which is true, that in a challenge that's brought to your Honor after the patent is issued, even Nautilus says it in that same footnote 10, we still are entitled to a presumption of validity. It is still the challenger's burden to prove that there's not definiteness here. And the district court's ruling is that the   10 does not have a      court's ruling is  the Nautilus footnote 10 does not have a definiteness here. And the district court's ruling is that the Nautilus footnote 10 does not have a court's ruling here. And the district  ruling is that the court's ruling is that  Nautilus footnote 10 does not have a court's ruling here. And the district court's ruling is that the district court's ruling others other citations read is that at no time did B.I. sign it. But you take my point. I do. Okay. All right. Well, your time is up since you haven't dealt with the cross-appeal issue. Correct.  Milliken. Oh, you mean his time too. All right. Well, just understand if you raise it then he's going to have two minutes of rebuttal, but that's fine if you want to argue that. This is one of the reasons we have much split arguments here. May it please the court, your honors, if you have questions on the indefiniteness issue, I'm happy to address them. Otherwise, I'd be pleased to rest on griefs. No. Okay. Thank you. So, thank party very much. This was a helpful argument. Thank you. And the case is submitted.